IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | CHAPTER 13 |
| OSIRIS TALABA SANTANA<br>AKA: OSIRIS TALABAS SANTANA | CASE NO. 24-02128-MCF13 |
| Debtor. | |
| _____/ | |

**MOTION FOR RELIEF FROM AUTOMATIC
STAY UNDER 11 U.S.C. SECTION 362**

**TO THE HONORABLE COURT:**

  **COMES NOW,** BMW Financial Services NA, LLC ("Movant"/ "Secured Creditor"), by and through its undersigned counsel, moves this Honorable Court to lift the automatic stay herein and requests adequate protection on the following grounds:

1. The Bankruptcy Court has jurisdiction over this proceeding pursuant to 11 U.S.C. 362, and Rule 4001(a) of the Federal Rules of Bankruptcy Procedure and the various other applicable provisions of the United States Bankruptcy Code, Federal Rules of Bankruptcy Procedure and the laws of the United States of America.

2. BMW Financial Services NA, LLC, a secured creditor in the above captioned case, has not been offered nor provided adequate protection as required by section 362 of the Bankruptcy Code. Consequently, Movant requests that an order lifting the automatic stay be entered in its favor.

3. Debtor filed for relief pursuant to Chapter 13 of Title 11 of the United States Bankruptcy Code on May 21, 2024.

4. Moreover, the Secured Creditor's interest would be irreparably harmed by the

continuation of the stay. Consequently, Movant also requests that an order lifting the automatic stay be entered in its favor pursuant to section 11 U.S.C. 362.

5. Movant is the holder in due course of a duly perfected security interest over a 2020 MINI Cooper Convertible 2D S 2.0L I4 Turbo (the "Vehicle"), VIN number WMWWJ5C01L3L01456, as evidenced by the Motor Vehicle Retail Installment Contract (the "Contract") and the Title of the Vehicle, which are hereby attached as Exhibit I and II, respectively.

6. As of September 3, 2024, the remaining balance approximated $19,535.73.

7. The Contract has been registered under the name of the Debtor OSIRIS TALABA SANTANA. The Debtor has not complied with the terms and conditions of the Contract. As such, Debtor has failed to comply with payments to secured creditor herein, installments of total arrearage owed as of September 3, 2024, to Movant, amounting to post petition arrears of $772.64. See Exhibit IV attached hereto and made part hereof for an itemized statement of the arrearage.

8. According to the publication commonly relied upon by banks, insurance companies, government agencies, and dealers in determining the value of the Vehicle, the retail market value of the Vehicle as per NADA is $23,075.00. A copy of NADA is attached hereto as Exhibit III.

9. The default deprives Movant of having its security interest protected as provided under the Bankruptcy Code and would be irreparably harmed.

10. Upon information and belief, Debtor has continued to operate and is at the present operating the Vehicle, consequently causing depreciation in its value and risk of loss, and therefore jeopardizing Movant's interest over such property.

11. In view of the fact that Debtor is not adequately protecting Secured Creditor's interest over the Vehicle, relief from the automatic stay should be granted pursuant to 11 U.S.C. 362

(d)(1) and for cause, namely the lack of adequate protection to Secured Creditor for its security interest in the Vehicle.

12. Attached hereto as Exhibit V is the non-military service affidavit required for the entry of an order by default by the Servicemember's Civil Relief Act, 50 USC Appx. 521.

13. Movant has incurred attorney's fees of $350.00 in legal fees and $199.00 in costs as a result of the necessity of filing this Motion. Movant's attorney's fees and costs are recoverable as part of the debt pursuant to the loan documents.

14. Movant respectfully requests that the Court waive the fourteen (14) day stay of the Order Granting Relief pursuant to Bankruptcy Rule 4001(a)(3), so that Movant can pursue its in rem remedies without further delay.

**WHEREFORE**, Movant respectfully requests that the Debtor's stay be lifted so that Secured Creditor may be permitted to protect its security interest in Debtor's property outside of the bankruptcy forum, with any further relief as the Court may deem just and proper.

**NOTICE**

Within fourteen (14) days after service as evidenced by the certification, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if you were served by mail, any party against whom this paper has been served, or any other party to the action who objects to the relief sought herein, shall serve and file an objection or other appropriate response to this paper with the clerk's office of the United States Bankruptcy Court for the District of Puerto Rico. If no objection or other response is filed within the time allowed herein, the paper will be deemed unopposed and may be granted unless: (i) the requested relief is forbidden by law; (ii) the requested relief is against public policy; or (iii) in the opinion of the court, the interest of justice requires otherwise. If no response is filed within the prescribed period of time the Court may enter an order granting the relief herein requested.

## CERTIFICATE OF SERVICE

I hereby certify this same date; I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all CM/ECF participants.

In San Juan, Puerto Rico, this 12th day of November 2024.

**Tromberg, Morris & Partners, PLLC**

*/s/ Patricia I. Varela Harrison*
By: Patricia I. Varela Harrison
USDC -PR 224802
600 West Hillsboro Boulevard,
Suite 600
Deerfield Beach, FL 33441
Tel. 877-338-4101
Fax #: 561-338-4077
prservice@tmppllc.com
pvarela@tmppllc.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11-12-24, a true and correct copy was mailed to the non-CM/ECF participants listed below:

OSIRIS TALABA SANTANA
URB SANTA JUANITA
W 1 PENSACOLA ST
BAYAMON, PR 00956

**Tromberg, Morris & Partners, PLLC**

*/s/ Patricia I. Varela Harrison*
By: Patricia I. Varela Harrison
USDC -PR 224802
600 West Hillsboro Boulevard,
Suite 600
Deerfield Beach, FL 33441
Tel. 877-338-4101
Fax #: 561-338-4077
prservice@tmppllc.com
pvarela@tmppllc.com

# BMW Financial Services NA, LLC
## Motor Vehicle Retail Installment Contract - Puerto Rico

### 1. PARTIES

**BUYER(S) Name:** OSIRIS TABALA SANTANA
**Address (include County and Zip Code):** CALLE PENSACOLA W1 SANTA JUANITA BAYAMON PR 00956
**Billing Address (if different):** CALLE PENSACOLA W1 SANTA JUANITA BAYAMON, PR 00956

**SELLER Name:** AUTOGERMANA BMW
**Address:** CALLE CHARDON ESQ. CESAR GONZALEZ SAN JUAN, PR 00918

**Date of Contract:** 02/11/2023

This Motor Vehicle Retail Installment Contract ("Contract") is entered into between the buyer(s) ("Buyer") and the seller ("Seller") named above. Unless otherwise specified or required by context, "I", "me" and "my" refer to the Buyer and "you" and "your" refer to the Seller or Seller's assignee. "Vehicle" refers to the vehicle described below. I promise to pay the Seller the Amount Financed plus the Finance Charge calculated at the Annual Percentage Rate shown below according to the Payment Schedule shown below. I acknowledge that I am purchasing the Vehicle from the Seller on an installment basis and accept the Vehicle in its present condition, including all its equipment, parts and accessories.

### 2. VEHICLE

| | | | | | | |
|---|---|---|---|---|---|---|
| ☐ New ☒ Used | Year 2020 | Make MINI | Model COOPERS | Vehicle Identification Number WMWWJ5C01L3L01456 | Odometer Reading 30780 | ☐ Personal Use ☐ Business Use |
| ☐ CD Player | ☐ N/A (specify) | | ☐ N/A (specify) | | ☐ N/A (specify) | |

### 3. CREDIT DISCLOSURES                                    e=estimate

| ANNUAL PERCENTAGE RATE The cost of my credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost me. | Amount Financed The amount of credit provided to me or on my behalf. | Total of Payments The amount I will have paid after I have made all payments as scheduled. | Total Sale Price The total cost of my purchase on credit, including my downpayment of $ 15359.00 . |
|---|---|---|---|---|
| 4.99 % | $ 3820.04 e | $ 23995.00 | $ 27815.04 e | $ 43174.04 e |

### PAYMENT SCHEDULE

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | 386.32 | Monthly, beginning 03/11/2023 |
| 1 Balloon Payment (if applicable) N/A | N/A | N/A |

**SECURITY.** I am giving a security interest in the Vehicle.
**LATE CHARGE.** If all or any portion of a payment is more than 15 days late, I will be charged 5% of that payment as a late payment penalty.
**PREPAYMENT.** If I pay off early, I will not have to pay a penalty.

Please read all pages of this Contract for additional information on security interests, nonpayment, default, and the right to require repayment in full before the scheduled maturity date.

### 4. RESERVED

N/A

Exhibit 1
02/11/2023 01:11 pm
1 of 6

## 5. ITEMIZATION OF THE AMOUNT FINANCED

**A. CASH PRICE**
(1) Cash Price of Vehicle and Accessories $ 39354.00
(2) Sales Tax + N/A
(3) Other (Describe) N/A + N/A
(4) Other (Describe) N/A + N/A
(5) Other (Describe) N/A + N/A
(6) Total Cash Price = 39354.00

**B. DOWN PAYMENT**
(1) Net Value of Trade-In
(Gross Allowance $ N/A  Payoff $ N/A )
(Year N/A  Make N/A  Model N/A ) $ N/A
(2) Cash Down Payment + 15359.00
(3) Manufacturer's Rebate Assigned to Seller + N/A
(4) Other (Describe) N/A + N/A
(5) Total Down Payment = 15359.00

**C. UNPAID BALANCE OF CASH PRICE**
(A(6) minus B(5)) $ 23995.00

*Seller and/or Seller's affiliates may retain or receive a portion of these amounts.

**D. AMOUNTS PAID TO OTHERS ON MY BEHALF**
(1) To Public Officials:
(a) License, Title, and Registration Fees $ N/A
(b) Other Official Fees (Describe) _____ + N/A
N/A
(2) To Insurance Companies For:
(a) Credit Life/Disability Insurance + N/A *
(b) Other Insurance (Describe) N/A + N/A *
(3) Other Charges:
(a) To N/A  For N/A + N/A *
(b) To N/A  For N/A + N/A *
(c) To N/A  For N/A + N/A *
(d) To N/A  For N/A + N/A *
(e) To N/A  For N/A + N/A *
(f) To N/A  For N/A + N/A *
(g) To N/A  For N/A + N/A *
(h) To N/A  For N/A + N/A *
(4) Total Amounts Paid to Others on My Behalf = N/A

**E. AMOUNT FINANCED** (C plus D(4)) $ 23995.00

**THE SELLER MAY ASSIGN THIS CONTRACT AND RECEIVE A FEE OR OTHER CONSIDERATION FOR FACILITATING THIS FINANCING.**

## 6. SERVICE CONTRACT

**A service contract is not required to obtain credit and will not be provided unless I sign and agree to pay the cost.** The service contract issued by the Provider will describe the terms and conditions in further detail. By signing below, I agree to purchase the service contract for the term and cost indicated.

Provider: N/A  Cost: $ N/A  Term: N/A  months or N/A  miles, whichever occurs first.
Provider: N/A  Cost: $ N/A  Term: N/A  months or N/A  miles, whichever occurs first.
Provider: N/A  Cost: $ N/A  Term: N/A  months or N/A  miles, whichever occurs first.
Provider: N/A  Cost: $ N/A  Term: N/A  months or N/A  miles, whichever occurs first.
Provider: N/A  Cost: $ N/A  Term: N/A  months or N/A  miles, whichever occurs first.

X N/A
Buyer's Signature

X N/A
Buyer's Signature

## 7. CREDIT INSURANCE

**Credit life or credit disability insurance is not required to obtain credit and will not be provided unless I sign and agree to pay the premium.** My decision to obtain (or not obtain) credit insurance is not a factor in granting credit and does not affect your credit decision. The policies or certificates issued by the insurer will describe the terms and conditions in further detail. By signing below, I agree to pay for the following insurance for the terms and premiums indicated.

☐ I want Credit Life Insurance (One Buyer only)  Term N/A mos.  Premium $ N/A  Insured Name: OSIRIS TABALA SANTANA
☐ I want Joint Credit Life Insurance  Term N/A mos.  Premium $ N/A  Insured Name: OSIRIS TABALA SANTANA
Insured Name: _____
☐ I want Credit Disability Insurance (One Buyer only)  Term 72 mos.  Premium $ N/A  Insured Name: N/A

Name of Insurer(s): _____

X N/A
Buyer's Signature

X N/A
Buyer's Signature

## 8. OPTIONAL GAP CONTRACT ("GAP")

**GAP is not required to obtain credit and I may purchase it from anyone I want who is reasonably acceptable to the Seller.** I may purchase GAP under this Contract by signing below and agreeing to pay the purchase price, shown in Section 5.D above. See my GAP contract for details on the protection it provides.

Term **N/A** mos.    Name of GAP Contract **N/A**

x _____**N/A**_____    x _____**N/A**_____
Buyer's Signature                                                Buyer's Signature

## 9. INSURANCE VERIFICATION

I agree to maintain the insurance coverage described in Section 12. I affirm that such insurance is in force on the date of this Contract. I authorize the Seller and its assignees to speak to my insurance agent or company, and any future insurance agents or companies, about my coverage for the Vehicle.

Insurance Company                         Policy No.                         Coverage Verified (Center Employee's Initials)

**N/A**

Agent Name                                 Address                                 Phone No.

All matters regarding insurance should be sent by e-mail to insuranceinfo@bmwfs.com; or faxed to 888-725-8456.

## 10. BALLOON PAYMENT OPTION

This paragraph applies if a Balloon Payment is shown in the Payment Schedule in Section 3. This paragraph only applies to a Balloon Payment, which is a final payment that is more than twice as large as the average of all prior scheduled payments. When my Balloon Payment is due, I may either: (a) pay the amount I owe under this Contract when the Balloon Payment is due in full in cash; or (b) if I qualify, refinance the amount I owe under this Contract when the Balloon Payment is due with you, at your then prevailing rates, terms and conditions.

## 11. PAYMENTS AND SECURITY INTEREST

**A. SIMPLE INTEREST CONTRACT.** I understand that this is a simple interest contract. The amount of the Finance Charge and the amount owed on this Contract on the final payment due date shown in Section 3 may vary depending upon when payments are received. The earlier that payments are received before each due date, the less Finance Charge I owe. The later that payments are received after each due date, the more Finance Charge I owe. Payments are first credited to accrued Finance Charge and then to the unpaid balance of the Amount Financed. After my last payment, you will advise me of any amounts owed or refund any amounts owed to me.

**B. LATE CHARGE AND RETURNED PAYMENT CHARGE.** If you do not receive my total monthly payment or any other payment within 15 days after it is due, I agree to pay the late charge described in Section 3 of this Contract, but not exceeding any limit under applicable law. If any check, draft or order or other similar instrument or any other payment is returned to you unpaid for any reason, including, but not limited to, non-sufficient funds, I will be liable for a returned payment charge of $25.

**C. SECURITY INTEREST.** In order to secure my obligations and indebtedness under this Contract, I grant you a security interest in (i) the Vehicle; (ii) all proceeds of such property; (iii) the loss proceeds of any Vehicle insurance; and (iv) if the cost is included in the monthly payment under this Contract, the proceeds, cancellation refunds or rights of any service or mechanical breakdown protection contract. I recognize that you are entitled to all the rights and remedies provided under The Puerto Rico Commercial Transactions Act (Act 208 of August 17, 1995, as amended), including the right to repossess the Vehicle without judicial proceedings. Once the Vehicle is repossessed, you may dispose of the Vehicle pursuant to, and in accordance with, the provisions of the Puerto Rico Commercial Transactions Act. I further recognize and agree that this Contract may be filed with any agency or entity to protect or perfect your rights and security interest hereunder. By my signature, I agree to execute (before a notary public, at your option) and file (or at your option, deliver to you, for filing) a financing statement or other document with respect to the Vehicle that may be required by, or be convenient to create, perfect and/or reflect your interest therein on the public records under Act 208 of August 17, 1995, as heretofore and hereafter amended.

I agree to fully cooperate with you to perfect your security interest in the Vehicle, including, but not limited to, paying applicable titling and registration fees, obtaining a smog and/or safety inspection from an authorized inspection station, obtaining applicable inspections of the vehicle identification number from the appropriate law enforcement or other government official(s), and providing you with inspection certificates and other documents necessary to perfect your security interest.

## 12. VEHICLE INSURANCE

**A. REQUIREMENTS.** For the term of this Contract I must obtain and maintain insurance coverage for loss of or physical damage to the Vehicle (comprehensive, collision, fire and theft coverage) that covers your interest in the Vehicle, in the amount equal to the actual cash value of the Vehicle or the unpaid balance under this Contract, whichever is less. The maximum deductible allowed for collision and comprehensive coverages is $1000. **I have the option of obtaining this insurance through an insurer of my choice that is acceptable to you.** I must designate you as loss payee on such insurance. The policy must provide you with at least 30 days advance notice of any amendment to or cancellation of coverage. I must furnish satisfactory evidence that the Vehicle continues to be adequately covered by physical damage insurance for the entire term of this Contract, unless a charge for such insurance is included in this Contract. If at any time during the term of this Contract I fail to maintain or evidence the required insurance, you may, as permitted by law and at your option, purchase insurance which covers only your interest in the Vehicle. If you buy such coverage you will notify me and describe the charge I must pay. The charge will be payable either: (1) in equal installments along with the remaining monthly payments and will consist of the cost of insurance plus interest at the Annual Percentage Rate shown in Section 3 of this Contract; or (2) within 10 days of written notice to me. Any charge will be secured by the Vehicle. Purchase of any additional insurance coverage is strictly at my option.

I agree that, at your election, you can use any proceeds from insurance to repair the Vehicle or to reduce the amount that I owe on this Contract.

**B. INSURANCE OR OTHER CHARGES RETURNED.** If any charge for required insurance is returned to you, it may be credited to my account or used to buy similar insurance or insurance which covers your interest in the Vehicle. I agree that if you receive any refund on any optional insurance, maintenance, service, or any other optional contracts or products financed under this Contract, you may use the refund to reduce the amount I owe on this Contract. Any remaining credits totaling $1 or more will be refunded to me.

## 13. WARRANTIES AND VEHICLE USE

**A. WARRANTIES.** The Seller is not offering any express warranties unless the Seller has given a written warranty to me. If the Seller extends, or the Vehicle's manufacturer extends, a written warranty or service contract covering the Vehicle within 90 days from the date of this Contract, I get implied warranties of merchantability and fitness for a particular purpose covering the Vehicle. If not, the Seller specifically disclaims any implied warranties of merchantability and fitness for a particular purpose covering the Vehicle.

**B. VEHICLE USE.** I agree that I will: (1) not garage the Vehicle at an address other than the address shown on this Contract without your written consent and will notify you of changes in my address; (2) not sell the Vehicle without your written consent; (3) not allow a lien to be placed upon the Vehicle; (4) not abandon the Vehicle or use it for hire or illegally; (5) maintain the Vehicle in good condition and have the Vehicle serviced and maintained in accordance with the manufacturer's recommendations and specifications, so long as I have obligations under this Contract; (6) permit you to inspect the Vehicle at any reasonable time; and (7) pay when due all taxes and assessments levied on the Vehicle. Should I fail to promptly pay any

Exhibit 1
02/13/2023  01:11 pm
3 of 6

lien, encumbrance or taxes on the Vehicle, you may do so on my behalf. In such event, I must immediately reimburse you for the cost thereof. If I do not immediately reimburse you, such cost, plus interest at a rate not to exceed the Annual Percentage Rate disclosed in Section 3 of this Contract, will be added to the amount I owe under this Contract.

## 14. DEFAULT

**A. DEFAULT.** I will be in default under this Contract if: (1) I fail to pay three consecutive installments; (2) I fail to pay one or more installments due, if on two or more previous occasions I have failed to pay two or more consecutive installments and I have totally rehabilitated myself in the payment of the installments due; or (3) I have failed to pay one or more consecutive installments and I present a partial payment of the sum due and, after making said partial payment, continue paying the future installments when due, but I continue in default with respect to the remainder of the sum overdue during three consecutive installments subsequent to the date on which the partial payment was made.

**B. REMEDIES.** If I am in default, you may demand that I pay all amounts I owe under this Contract at once (accelerate) and may pursue any or all of your other rights and remedies available under the law. In the event this Contract is referred to an attorney who is not one of your employees for repossession proceedings or for collection through judicial means, I shall pay you the following attorney fees: $50.00 or 5% of the balance of the debt, whichever is greater. If I satisfy my obligation after an action has been filed but before notice is published, these charges may be $50.00 or 5% of the installments past due and paid, whichever is greater, if the proceedings turn into contentious litigation. If, during repossession of the Vehicle, you come into possession of any property which is not security for this Contract, you will hold it for me. If I do not claim the property within thirty (30) days after you have repossessed the Vehicle, you can dispose of the property in any manner you select. I agree that you will have no further liability to me for this property. Any accessories, equipment or replacement parts will remain within the Vehicle. Your remedies can be exercised singularly or in any combination. In the event of a default, you may also repossess the Vehicle without judicial process, in which event I may be entitled to get it back (redeem) by making timely payment of charges (such as repossession fees and storage costs) incidental to the repossession plus the past due amount plus other amounts due under this Contract and performance of all other obligations under this Contract. If the Vehicle is sold, the proceeds will be applied first to reasonable expenses of repossessing, reconditioning, storing and selling the Vehicle, including attorneys' fees and court costs, and then to all amounts due under this Contract. If there is any money left over, it will be paid to me, subject to the rights of any other secured parties. If the proceeds of the sale of the Vehicle are insufficient to pay all amounts due to you, plus the costs and expenses of repossession and sale, I will be liable for any deficiency to the extent permitted by applicable law.

If the Vehicle has an electronic tracking device, I agree that you may use the device to find the Vehicle.

## 15. POWER OF ATTORNEY

I appoint you, to the extent permitted by law, through your officer or employee, as my attorney-in-fact. My grant of this power of attorney is coupled with an interest, and is irrevocable until all obligations I owe under this Contract are paid in full. As my attorney-in-fact, you can sign on my behalf all Certificates of Ownership, Registration Cards, applications, affidavits, or any other documents required to register and properly perfect your security interest in the Vehicle; transfer my entire interest in the Vehicle as part of a repossession and sale; act on my behalf in insurance matters relating to the Vehicle, including, but not limited to, the power to endorse insurance proceeds checks or drafts on my behalf; and cancel any Credit Life, Credit Disability, Guaranteed Automotive Protection Coverage, Extended Warranty, or any other optional insurance, contracts or products financed under this Contract, and apply the refunded premium or cost to my outstanding balance if I am in default. Should an original power of attorney be necessary to accomplish any of the preceding, I agree to execute a separate identical power of attorney document and promptly provide you with the same.

## 16. ADDITIONAL TERMS

I understand that: (A) I have no right to assign any of my rights under this Contract, although you may assign your interests under this Contract without my consent; (B) you may waive or delay the enforcement of your rights under this Contract without affecting your rights on future defaults; (C) any portion of this Contract which may be held unenforceable shall not affect the enforceability of other portions of this Contract; (D) if more than one buyer has signed this Contract, each one will be jointly and severally liable for all obligations under this Contract; (E) all correspondence and notices will be sent to me at my Billing Address shown in Section 1 of this Contract unless I give you a different address in writing; and (F) except as provided in Section 18, this Contract will be governed by applicable federal law and the substantive laws of Puerto Rico. **This Contract describes all of the agreements with respect to the retail installment sale of the Vehicle between me and the Seller and all prior agreements, whether oral or in writing, are superseded. This Contract cannot be changed or terminated by any oral agreement.**

## 17. FTC NOTICES

If the Vehicle is a used vehicle, the following notice applies:

**THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.**

The following notice does not apply if the Vehicle is purchased for business use:

> **NOTICE - ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

## 18. ARBITRATION CLAUSE

**PLEASE REVIEW - IMPORTANT - AFFECTS OUR LEGAL RIGHTS**

**NOTICE:** Either you or I may choose to have any dispute between us decided by arbitration and not in a court or by jury trial. If a dispute is arbitrated, I will give up my right to participate as a class representative or class member on any Claim I may have against you including any right to class arbitration or any consolidation of individual arbitrations. Discovery and rights to appeal in arbitration are generally more limited than in a lawsuit, and other rights you and I would have in court may not be available in arbitration.

"Claim" broadly means any claim, dispute or controversy, whether in contract, tort, statute or otherwise, whether preexisting, present or future, between me and you or your employees, officers, directors, affiliates, successors or assigns, or between me and any third parties if I assert a Claim against such third parties in connection with a Claim I assert against you, which arises out of or relates to my credit application, the sale, purchase, lease, or condition of the Vehicle, this Contract, or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Contract). Any Claim shall, at your or my election, be resolved by neutral, binding arbitration and not by a court action. "Claim" does not include any dispute or controversy about the validity, enforceability, coverage or scope of this Arbitration Clause or any part thereof (including, without limitation, the Class Action Waiver set forth below and/or this sentence); all such disputes or controversies are for a court and not an arbitrator to decide. But any dispute or controversy that concerns the validity or enforceability of the Contract as a whole is for the arbitrator, not a court, to decide. In addition, "Claim" does not include any individual action brought by me in small claims court or my state's equivalent court, unless such action is transferred, removed or appealed to a different court. "Claim" also does not include the exercise of any self-help remedies; any individual action in a court limited to preventing another party from exercising a self-help remedy if the action does not involve a request for damages or any other monetary relief of any kind; or any action for replevin of the Vehicle. Moreover, this Arbitration Clause will not apply to any Claims that are the subject of (a) a class action filed in court that is pending as of the effective date of this Arbitration Clause in which I am alleged to be a member of the putative class (however, you and I will continue to be bound by any prior Arbitration Clause) or (b) a motion to compel arbitration filed by you against me before the effective date of this Arbitration Clause pursuant to a prior Arbitration Clause (however, you and I will continue to be bound by any prior Arbitration Clause).

**Class Action Waiver. Notwithstanding any other provision of this Contract or Arbitration Clause, if either you or I elect to arbitrate a Claim, neither you nor I will have the right: (a) to participate in a class action, mass action, private attorney general action or other representative action in court or in arbitration, either as a class representative or class member; or (b) to join or consolidate Claims with claims of any other**

Exhibit 1 11:11 pm
4 of 6

persons. No arbitrator shall have authority to conduct any arbitration in violation of this provision. (Provided, however, that the Class Action Waiver does not apply to any lawsuit or administrative proceeding filed against you by a state or federal government agency even when such agency is seeking relief on behalf of a class including me. This means that you will not have the right to compel arbitration of any claim brought by such an agency.) The Class Action Waiver is material and essential to the arbitration of any Claims between the parties and is nonseverable from this Arbitration Clause. If the Class Action Waiver is limited, voided or found unenforceable, then this Arbitration Clause (except for this sentence) shall be null and void with respect to such proceeding, notwithstanding any other provision of this Contract, subject to the right to appeal the limitation or invalidation of the Class Action Waiver. The parties acknowledge and agree that under no circumstances will a class action be arbitrated.

If you or I choose to have a Claim decided by arbitration, the Claim will be arbitrated by a single arbitrator. The party commencing arbitration may choose the American Arbitration Association ("AAA"), 120 Broadway, New York, NY 10271, www.adr.org, 1-800-778-7879 or JAMS, 1920 Main Street, Suite 300, Irvine, CA 92614, www.jamsadr.com, 1-800-352-5267 to administer the arbitration. The rules and forms of the AAA and JAMS may be obtained on their websites or by writing to these organizations at the addresses listed above. Either you or I may request an expedited hearing under the applicable rules. If the AAA and JAMS are unable or unwilling to serve as administrator, or we mutually agree not to utilize the AAA and JAMS for whatever reason, we may agree upon another arbitration administrator or, if we are unable to agree, a court shall determine the administrator. No company may serve as administrator, without the consent of all parties, if it adopts or has in place any formal or informal policy that is inconsistent with and purports to override the terms of this Arbitration Clause. If the chosen administrator's rules or other provisions of this Contract (including any other arbitration provision relating to this Contract) conflict with this Arbitration Clause, then the provisions of this Arbitration Clause shall control. If a party files a lawsuit in court asserting any Claim that is subject to arbitration and the other party files a motion to compel arbitration with the court which is granted, it will be the responsibility of the party prosecuting the Claim to select an arbitration administrator in accordance with this paragraph and commence the arbitration proceeding in accordance with the administrator's rules and procedures.

Arbitrators shall be attorneys with at least ten years of experience or retired judges and shall be selected pursuant to the applicable rules. The arbitrator will not be bound by judicial rules of procedure and evidence that would apply in a court or by state or local laws that relate to arbitration proceedings. The arbitrator will honor statutes of limitation and claims of privilege recognized under applicable law. In determining liability or awarding damages or other relief, the arbitrator will follow the applicable substantive law, consistent with the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), that would apply if the matter had been brought in court, including, without limitation, punitive damages (which shall be governed by the Constitutional standards employed by the courts). The arbitrator may award any damages or other relief or remedies permitted by applicable law including equitable, temporary and/or provisional remedies. The arbitrator shall write a brief explanation of the grounds for the decision. Any arbitration hearing that I attend shall be conducted at a place reasonably convenient to where I reside. Any court having jurisdiction may enter judgment on the arbitrator's award.

In any arbitration that I have commenced against you, if the total amount of my Claim(s) is less than $25,000: (a) you will pay any and all fees and costs of the arbitration administrator and/or the arbitrator if I make a written request for you to pay such fees; and (b) you will pay my reasonable attorneys' and expert witness fees and costs if and to the extent I prevail in the arbitration in an amount as determined by the arbitrator. Except as provided above, we shall each pay such fees and costs of the arbitration administrator and/or the arbitrator as provided by the rules of the arbitration administrator, including, if applicable, the arbitration administrator's rules or fee and cost allocations for consumer-related arbitrations. Except as provided above, you and I shall each be responsible for our own attorneys' and expert witness fees, unless such fees are awarded in the arbitration by the arbitrator under applicable state or federal law.

The arbitrator's award shall be final and binding on all parties, except for any right of appeal provided by the FAA. If the amount of the Claim exceeds $100,000 or involves a request for injunctive or declaratory relief that could foreseeably involve a cost or benefit to either party exceeding $100,000, however, any party can, within 30 days after the entry of the award by the arbitrator, appeal the award to a three-arbitrator panel administered by the administrator. The panel shall reconsider anew any aspect of the initial award requested by the appealing party. The decision of the panel shall be by majority vote. Reference in this Arbitration Clause to "the arbitrator" shall mean the panel if an appeal of the arbitrator's decision has been taken. The appealing party shall be responsible for the filing fee and other arbitration costs for the appeal panel, which fee and costs may be reimbursed by decision of the arbitrator at the arbitrator's discretion. Any final decision of the appeal panel is subject to judicial review only as provided under the FAA.

You and I may retain any rights to self-help remedies, such as repossession. Neither the exercise of any self-help remedies nor any individual action in court by one party limited solely to preventing the other party from using a self-help remedy and without any claim for damages or any other monetary or equitable relief is subject to arbitration. Neither you nor I waive the right to arbitrate by using self-help remedies.

This Arbitration Clause shall survive any termination, payoff, or transfer of this Contract and shall also survive any bankruptcy to the extent consistent with applicable bankruptcy law. If any part of this Arbitration Clause, other than the Class Action Waiver, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. This Contract involves interstate commerce and this Arbitration Clause and any arbitration hereunder shall be governed by the FAA and not by any state law concerning arbitration. However, the governing law as to the substantive issues concerning this Contract and the Vehicle shall be the law of the state of the Seller's place of business shown in Section 1 of this Contract and applicable federal law.

Notwithstanding any other provision for notice contained in this Contract, any arbitration Claim or other notice provided under the rules of the arbitration administrator will be given to you at the following address: If my Claim is against the Seller, I agree that notice of my Claim will be given to the Seller at the address specified in Section 1 of this Contract. If my Claim is against the Assignee (designated in Section 21 of this Contract), I agree that notice of my Claim will be given at 1400 City View Drive, Columbus, Ohio 43215. If my Claim is against both the Seller and the Assignee, I agree that both the Seller and the Assignee will be notified of my Claim at the addresses indicated herein.

### 19. ASSIGNEE NOTICE

NOTICE TO THE ASSIGNEE: THE ASSIGNEE RECEIVING OR ACQUIRING THIS RETAIL INSTALLMENT CONTRACT OR A PROMISSORY NOTE RELATED THERETO, SHALL BE SUBJECT, UNDER EQUAL CONDITIONS, TO ANY CLAIM OR DEFENSE THAT THE BUYER MAY INITIATE AGAINST THE SELLER. THE ASSIGNEE OF THE CONTRACT SHALL BE ENTITLED TO FILE AGAINST THE SELLER ALL THE CLAIMS AND DEFENSES THAT THE BUYER MAY RAISE AGAINST THE SELLER OF THE GOODS AND THE SERVICES.

Exhibit 1 04/13/2023 01:11 pm
5 of 6

## 20. BUYER NOTICES AND CONTRACT SIGNATURES

IMPORTANT: READ THE ADDITIONAL TERMS ON ALL PAGES BEFORE SIGNING BELOW.

NOTICE TO BUYER: DO NOT SIGN THIS CONTRACT BEFORE READING THE SAME OR IF IT CONTAINS BLANK SPACES. YOU ARE ENTITLED TO A COPY OF THIS CONTRACT. UNDER THE PRESENT LAW, YOU HAVE THE RIGHT TO PAY OFF IN ADVANCE THE BALANCE OWED UNDER THE CONTRACT. IN THOSE CASES, THE PRINCIPAL OWED AS OF THE DATE OF PAYMENT, PLUS ANY BALANCE TO COVER CHARGES OR INTEREST ACCRUED TO THAT DATE, SHALL BE CANCELLED.

| I ACKNOWLEDGE RECEIPT OF A COMPLETELY FILLED-IN AND EXECUTED COPY OF THIS CONTRACT AT THE TIME OF SIGNING. | NOTICE TO THE DEBTOR: YOU ARE HEREBY NOTIFIED THAT THE SECURED PARTY MAY, AFTER ANY EVENT OF DEFAULT, TAKE POSSESSION OF THE COLLATERAL WITHOUT JUDICIAL PROCESS. | RETAIL INSTALLMENT CONTRACT |
|---|---|---|
| Buyer's Signature: X *[signature]* | Buyer's Signature: X_____N/A_____ | |

## 21. SELLER SIGNATURE

The authorized signature of the Seller has the effect of: (1) acknowledging that no representations or warranties beyond those presented in this Contract have been made; (2) confirming that no written or oral representations have been made by or to the borrower that can be used as a defense to this Contract; (3) accepting the terms and conditions of this Contract; (4) acknowledging verification of the existence of the insurance coverage required by this Contract with the Buyer's insurance agent; (5) assigning this Contract to BMW Financial Services NA, LLC ("BMW FS"), 1400 City View Drive, Columbus, Ohio 43215; and (6) acknowledging that the Center Agreement in place with BMW FS governs this transaction. Seller shall not be an agent of BMW FS for any purpose.

Authorized Signature: X *[signature]*    Title: **FI MANAGER**

Exhibit 1
6 of 6
1:11 pm

# CERTIFICADO DE TITULO

## GOBIERNO DE PUERTO RICO
### DEPARTAMENTO DE TRANSPORTACION Y OBRAS PUBLICAS
### DIRECTORIA DE SERVICIOS AL CONDUCTOR

14mar2023 10:29:18

| NUMERO DE TITULO | FECHA DE EXPEDICION | NUMERO DE REGISTRO | FECHA DE REGISTRO |
|---|---|---|---|
| A 1203692 | 01oct2020 | | 29jun2020 |

| NUMERO DE SERIE (VIN) | MARCA | MODELO | AÑO | NUM. CILINDROS |
|---|---|---|---|---|
| WMWWJ5C01L3L01456 | MINI | COOPER | 2020 | |

| CAP. CARGA | PESO | NUEVO USADO | TITULO ANTERIOR | ESTADO | ODOMETRO | COLOR |
|---|---|---|---|---|---|---|
| | | NUEVO | Cert Orig | NJ | 10 | VERDE |

**NOMBRE Y DIRECCION DEL DUEÑO REGISTRAL**

Nombre: TALABA SANTANA, OSIRIS

Resid: URB SANTA JUANITA
PENSACOLA W-1
BAYAMON, PR 00956

ESTE ES SU
TITULO DE PROPIEDAD
CONSERVELO EN
SITIO SEGURO

Postal: URB ROYAL TOWN
A16 CALLE 1
BAYAMON, PR 00956-4500

GRAVAMENES

PRIMER GRAVAMEN (VENTA CONDICIONAL)
BMW Financial Services

FECHA
DIA-MES-AÑO
14mar2023

SEGUNDO GRAVAMEN (OTROS)

CANCELACION GRAVAMEN

EL (LOS) ABAJO FIRMANTE (S) TENEDOR (ES) DEL GRAVAMEN SOBRE EL VEHICULO DE MOTOR DESCRITO ARRIBA CERTIFICAMOS QUE EL MISMO HA SIDO PAGADO (SI MAS DE UN GRAVAMEN DEBERAN APARECER DOS (2) FIRMAS)

PRIMER
GRAVAMEN _____ _____ _____
                                              FECHA          FIRMA AUTORIZADA

SEGUNDO
GRAVAMEN _____ _____ _____
                                              FECHA          FIRMA AUTORIZADA

NUMERO CONTROL

SECRETARIO DTOP
O REPRESENTANTE AUTORIZADO

**NO ES VALIDO SI ES ALTERADO**

Exhibit II

# N.A.D.A. Official Used Car Guide
# Vehicle Valuation

Print Date: September 03, 2024

Vehicle Description: 2020 MINI Cooper Convertible 2D S 2.0L I4 Turbo
VIN: WMWWJ5C01L3L01456

**Base Values**

Retail: $ 23075.00    Wholesale/Trade-in: $ 19850.00

**Optional Equipment/Adjustments**

Estimated Miles: 62500    $ 0.00

**Total Adjusted N.A.D.A. Used Car Guide Values**

Retail: $ 23075.00    Retail/Wholesale Average: $ 21462.50

Reference 09/2024 Southeastern

Exhibit III

Payment History
OSIRIS TALABA SANTANA

| Date Received | Total Payment | Principal | Interest | Lender Note |
|---|---|---|---|---|
| 07/29/2024 | 386.32 | 275.61 | 110.71 | Loan Payment |
| 06/17/2024 | 386.32 | 276.69 | 109.63 | Loan Payment |
| 05/07/2024 | 386.32 | 340.08 | 46.24 | Loan Payment |
| 04/20/2024 | 386.64 | 276.31 | 110.33 | Loan Payment |
| 03/11/2024 | 386.00 | 338.33 | 47.67 | Loan Payment |
| 02/23/2024 | 386.32 | 317.97 | 68.35 | Loan Payment |
| 01/30/2024 | 386.32 | 293.91 | 92.41 | Loan Payment |
| 12/29/2023 | 386.32 | 263.51 | 122.81 | Loan Payment |
| 11/17/2023 | 386.32 | 303.28 | 83.04 | Loan Payment |
| 10/20/2023 | 386.32 | 302.13 | 84.19 | Loan Payment |
| 09/22/2023 | 386.32 | 231.36 | 154.96 | Loan Payment |
| 08/02/2023 | 386.32 | 303.17 | 83.15 | Loan Payment |
| 07/06/2023 | 386.32 | 336.30 | 50.02 | Loan Payment |
| 06/20/2023 | 386.32 | 253.58 | 132.74 | Loan Payment |
| 05/09/2023 | 386.32 | 293.50 | 92.82 | Loan Payment |
| 04/10/2023 | 386.32 | 295.57 | 90.75 | Loan Payment |
| 03/13/2023 | 386.32 | 287.91 | 98.41 | Loan Payment |

Exhibit IV

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                                    CHAPTER 13

OSIRIS TALABA SANTANA                                     CASE NO. 24-02128-MCF13
AKA: OSIRIS TALABAS SANTANA
                    Debtor.
_____/

## UNSWORN STATEMENT UNDER PENALTY OF PERJURY

BMW Financial Services NA, LLC, (Movant), by and through its undersigned counsel, moves this Honorable Court to lift the automatic stay herein and requests adequate protection on the following grounds:

1. I am employed as a __Bankruptcy Manager__ by BMW Financial Services NA, LLC, (Movant), and declare under penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information and belief.

2. In the course of my employment. I have become familiar with the manner and method in which Movant maintains its books and records in its regular course of business. Those books and records are managed by employees and agents whose duty is to keep the books and records accurately and completely and to record each event or item at or near the time of the event or item so noted.

3. I have reviewed the books and records which reveal that Movant is the owner and holder of a Motor Vehicle Retail Installment Contract, (the Agreement), executed by Debtor OSIRIS TALABA SANTANA. Movant is secured under the Agreement by a properly perfected security interest as owner of the following Vehicle: 2020 MINI

Cooper Convertible 2D S 2.0L I4 Turbo (the "Vehicle"), VIN number WMWWJ5C01L3L01456 and more particularly described in those documents.

4. By virtue of the Agreement. Movant is the holder of a secured claim against the Debtor.

5. As of September 3, 2024, the remaining balance approximated $19,535.73.

6. As of September 3, 2024, the Debtor is in default of total post-petition arrears in the amount of $772.64.

7. The Debtor is in default on their obligations to Movant in that Debtor has failed to make Installment payments when due and owing pursuant to the terms of the above-described Agreement.

8. According to the publication commonly relied upon by banks, insurance companies, government agencies, and dealers in determining the value of the Vehicle, the retail market value of the Vehicle as per NADA is $23,075.00.

9. Movant has had to retain counsel to represent it before this Court and is incurring legal expenses and attorneys' fees for which it is entitled to reimbursement under the terms of the Agreement. I declare that the foregoing facts are true and correct.

FURTHER AFFIANT SAYETH NOT.

BMW FINANCIAL SERVICES NA, LLC

By: *(signature)*

Christopher Dick

Date: 10/22/2024



Department of Defense Manpower Data Center

# Status Report
## Pursuant to Servicemembers Civil Relief Act

| | |
|---|---|
| SSN: | XXX-XX-8682 |
| Birth Date: | |
| Last Name: | SANTANA |
| First Name: | OSIRIS |
| Middle Name: | TALABA |
| Status As Of: | Sep-09-2024 |
| Certificate ID: | 5DFZYD4FPBKRT7W |

| On Active Duty On Active Duty Status Date ||||
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date ||||

| Left Active Duty Within 367 Days of Active Duty Status Date ||||
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date ||||

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date ||||
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty ||||

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, Space Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Sam Yousefzadeh*

Sam Yousefzadeh, Director
Department of Defense - Manpower Data Center
4800 Mark Center Drive, Suite 04E25
Alexandria, VA 22350

Exhibit V